```
             IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

```
WAYNE ABLES, as next of kin of  )
VERNICE ELAINE ABLES,           )
                                )
     Plaintiff,                 )
                                )
v.                              )
                                )   No.: 2:10-CV-02169-JPM-dkv
SHELBY COUNTY, TENNESSEE,       )
and MICAH McNINCH,              )
                                )
     Defendants.                )
```

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S § 1983 CLAIMS AND DISMISSING PLAINTIFF'S STATE LAW CLAIMS WITHOUT PREJUDICE**

Before the Court is Defendants Shelby County, Tennessee ("Shelby County") and Micah McNinch's[1] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docket Entry ("D.E.") 8), filed May 17, 2010.  Plaintiff Wayne Ables, as next of kin of Vernice Elaine Ables, filed a response in opposition on June 17, 2010.  (D.E. 14.)  The Court held a telephonic hearing on the motion on July 22, 2010.  For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.[2]

---

[1] The Clerk is directed to correct the docket to reflect "Micah McNinch," as opposed to "Micah McNitch."

[2] Because the Court considered the DVD recording of the March 12, 2009 incident, and the affidavits submitted by the Defendants, the Court viewed the instant motion as a motion for summary judgment as opposed to a motion to dismiss.

**I.   Background**

On March 12, 2009 Vernice Elaine Ables was a passenger in a vehicle driven by her son, Plaintiff Wayne Ables.  (Def.'s Mot. to Dismiss at 2.)  At approximately 1:50 a.m., Defendant Deputy Micah McNinch ("Deputy McNinch") of the Shelby County Sherriff's Office ("SCSO") was driving on Germantown Parkway in Memphis, Tennessee when he observed that Plaintiff's vehicle was traveling approximately ten (10) miles per hour under the speed limit and that the vehicle's registration tags were expired.  (Id. at 8.)  Accordingly, Deputy McNinch initiated a traffic stop, which was recorded by a dashboard camera recording system.[3]  (Id.)  The DVD recording of the traffic stop (Pl.'s Mot. to Dismiss Ex. A to Ex. 1 (see D.E. 9)), and Deputy McNinch's affidavit (D.E. 8-3) establish the following relevant facts:

(1) At approximately 1:55 a.m., Plaintiff notifies Deputy McNinch that he is on his way to St. Francis Hospital because his mother, Vernice Ables, is in need of medical attention.  Plaintiff immediately requests that Deputy McNinch call for an ambulance.

(2) Mrs. Ables is seated in the backseat of Plaintiff's vehicle petting a small dog that is sitting in her lap.  Deputy McNinch asks Mrs. Ables if she is "having

---

[3]   Plaintiff concedes that Deputy McNinch initiated a lawful traffic stop. (Pl.'s Resp. at 12 ¶ 1.)

2

      shortness of breath." Mrs. Ables responds in the affirmative.

(3) Within a minute of Plaintiff's request, Deputy McNinch calls for an ambulance.

(4) After Deputy McNinch calls for an ambulance, Plaintiff requests that he be allowed to drive to St. Francis Hospital[4] escorted by Deputy McNinch.[5] Deputy McNinch informs Plaintiff that an ambulance is en route, that the fire station is just around the corner, and that the ambulance is the best way to get her to the hospital.

(5) Deputy McNinch returns to his squad car at approximately 1:57 a.m.

(6) Deputy McNinch remains in his vehicle for approximately eleven (11) minutes before the ambulance arrives on the scene at 2:08 a.m. Plaintiff does not advise Deputy McNinch of any change in his mother's condition during this eleven-minute period.

(7) At approximately 2:08 a.m., Plaintiff exits his vehicle and attempts to move Mrs. Ables, who appears

---

[4] It is undisputed that Plaintiff was pulled over less than a mile from St. Francis Hospital.

[5] In his response, Plaintiff disputes this order of events. The video recording of the incident, however, confirms that Plaintiff first requested an ambulance and subsequently requested that he drive his mother to the hospital instead.

3

       limp and unresponsive.

(8) Plaintiff desists in his attempt to move his mother and allows the paramedics to assume control of his mother's transfer to the ambulance.

(9) At approximately 2:09 a.m., Mrs. Ables is moved onto a gurney and transferred to the ambulance.

(10) From approximately 2:15 to 2:22 a.m., (a) the paramedics attempt to defibrillate Mrs. Ables, and (b) after attempts to defibrillate are unsuccessful, the paramedics, along with Deputy McNinch, perform cardiopulmonary resuscitation ("CPR").

(11) The ambulance remains on the scene until 2:28 a.m. when the ambulance departs for the hospital.

Despite the paramedics' attempts to resuscitate Mrs. Ables, she is pronounced dead at 2:41 a.m. (Pl.'s Resp. at 2.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the

absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

**III. Analysis**

In his complaint, Plaintiff brought a claim under 42 U.S.C. § 1983 alleging that Deputy McNinch and Shelby County violated

5

Vernice Ables's Fourteenth Amendment right to adequate medical treatment. (Compl. (D.E. 1) ¶¶ 14-17.) Plaintiff also asserts the following state law causes of action: negligence, gross negligence, negligent infliction of emotional distress, and outrageous conduct. (Id. ¶ 13.)

### A. 42 U.S.C. § 1983 Claim

42 U.S.C. § 1983 does not create substantive rights, but instead merely serves as a "method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To establish a prima facie case under § 1983, a plaintiff must prove two elements: (1) that the government action occurred under color of state law and (2) that the action is a deprivation of a constitutional or federal statutory right. Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)).

Because Deputy McNinch was acting in his official capacity as a member of the SCSO at all times relevant to this lawsuit, it is indisputable that he was acting under color of state law. As for the second element, Plaintiff asserts that Deputy McNinch violated his mother's rights under the Fourteenth Amendment by denying her adequate medical care. See Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) ("Pretrial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth

6

Amendment." (citations omitted)). Plaintiff also asserts that Shelby County is liable for Deputy McNinch's alleged constitutional violation because the SCSO policy prohibiting officers from transporting or providing an escort for pretrial detainees traveling to the hospital was the "moving force" behind the violation. See Ford v. County of Grand Traverse, 535 F.3d 483, 497 (6th Cir. 2008) (citing Bd. of County Comm'rs of Bryant County, Okla. v. Brown, 520 U.S. 397, 404 (1997)).

### 1. Deputy McNinch

Deputy McNinch asserts that he is entitled to summary judgment as to Plaintiff's § 1983 claim under the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Waeschle v. Dragovic, 576 F.3d 539, 543 (6th Cir. 2009) (citing Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)). "A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that the defendant[] acted with deliberate indifference to the serious medical needs of the pretrial detainee." Spears, 589 F.3d at 254 (citation omitted).

"Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendant[] knew of

7

and disregarded a substantial risk of serious harm to [the detainee's] health and safety." Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 835-37 (1994)); see also id. at 686 n.3 ("Mere negligence, however, is not enough to establish an Eight or Fourteenth Amendment violation."). There are two parts to a § 1983 claim grounded upon a failure to provide adequate medical treatment: (1) an objective component, in which the detainee must demonstrate the existence of a sufficiently serious medical need, and (2) a subjective component, in which the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care. Spears, 589 F.3d at 254 (citation omitted).

However, "officials who actually knew of a substantial risk to [a detainee's] health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Preyor v. City of Ferndale, 248 F. App'x 636, 644 (6th Cir. 2007) (citing Farmer, 511 U.S. at 844)). In the instant case, Deputy McNinch contends that by calling an ambulance immediately upon learning of Mrs. Ables's need for medical attention he reasonably responded to Mrs. Ables's need for medical care and thus sufficiently satisfied his obligation under the Fourteenth Amendment. The Court agrees.

In reaching this conclusion, the Court is guided by Rich v. Mayfield, 955 F.2d 1092 (6th Cir. 1992). Rich involved a pretrial detainee who attempted to hang himself in a jail cell. Id. at 1093-94. Upon discovering the detainee, the defendant police officers called the paramedics, as opposed to immediately attempting to cut down the detainee. Id. at 1094. The plaintiff argued that the Constitution required that the officers attempt to cut down the detainee rather than summoning medical assistance. Id. at 1097. The Sixth Circuit, however, rejected the plaintiff's argument and agreed with the defendant police officers, that "[b]ecause medical care was summoned *promptly* . . . [the detainee's] constitutional rights were not violated." Id. (emphasis added).

In support of its holding, the Sixth Circuit relied on Maddox v. City of Los Angeles, 792 F.2d 1408 (9th Cir. 1986), and Tagstrom v. Enockson, 857 F.2d 502 (8th Cir. 1988). In Maddox, the Ninth Circuit recognized that "[d]ue process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by *either promptly summoning the necessary medical help* or by taking the injured detainee to the hospital." Maddox, 792 F.2d at 1415 (emphasis added). Similarly, the Eighth Circuit in Tagstrom found that upon finding a suspect who was injured after a high-speed motorcycle chase, a police

9

officer who promptly called an ambulance, as opposed to rendering medical assistance himself, "was in no way deliberately indifferent to [the detainee's] medical needs." Tagstrom, 857 F.2d at 503-04 (noting that the officer "properly performed his duty by immediately calling am ambulance").

More recently, the district court for the Eastern District of Missouri reaffirmed the principle that an officer's obligation to provide medical care under the Fourteenth Amendment "is fulfilled . . . by promptly 'summoning the necessary medical help or by taking the injured detainee to the hospital.'" Teasley v. Fowler, 548 F. Supp. 2d 694, 709 (E.D. Mo. 2008) (quoting Maddox, 792 F.2d at 1415); see also Harvard v. Puntuer, 600 F. Supp. 2d 845, 860 (E.D. Mich. 2009) (noting that the "operative concept" behind the holdings in Maddox, Tagstrom, and Rich was the "promptness" in which the defendant police officers acted to secure medical attention).

In the instant case, it is undisputed that upon becoming aware of Mrs. Ables's need for medical assistance, Deputy McNinch reacted immediately by calling for the paramedics.  No case has been brought to the Court's attention which has found that a police officer must do more than promptly summon medical help when confronted with a pretrial detainee in need of medical assistance.  As noted by the Sixth Circuit, "[w]hile . . . there is no requirement that [courts] rely upon a case in which the

10

'very action in question has previously been held unlawful,' it is plaintiff's duty to establish, 'in the light of pre-existing law' that the unlawfulness of the police officers' conduct was apparent." See Rich, 955 F.2d at 1097 (citations omitted). Even viewing the facts in the light most favorable to Plaintiff, the Court finds that under the current state of the law regarding the Fourteenth Amendment "deliberate indifference" standard, Deputy McNinch was not deliberately indifferent to the decedent's medical needs on the morning of March, 12, 2009. Deputy McNinch is therefore entitled to qualified immunity and Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's § 1983 claim against Deputy McNinch.

**2.  Shelby County**

Having found no underlying constitutional violation committed by Deputy McNinch, Plaintiff's § 1983 claim against Shelby County likewise fails as a matter of law. See Boykin v. Van Buren Twp., 479 F.3d 444, 450 (6th Cir. 2007) ("The district court was . . . correct in holding, in light of its finding that there was no constitutional violation committed by [the defendant officers], that [the plaintiff's] claim of municipal liability 'necessarily fails.'"); Blackmore v. Kalamazoo County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."); Watkins, 273 F.3d

11

at 687 ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."). Defendants' Motion for Summary Judgment is therefore GRANTED as to Plaintiff's claim of § 1983 municipal liability.

    B.    **State Law Claims**

Plaintiff's § 1983 claims confer supplemental jurisdiction over his state law claims because they arise out of the same case or controversy. See 28 U.S.C. § 1367(a). District courts may, however, decline to exercise supplemental jurisdiction over a state law claim "if . . . in exceptional circumstances there are other compelling reasons for declining jurisdiction." Id. § 1367(c)(4). Shelby County's liability for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liability Act ("TGTLA"). See T.C.A. § 29-20-101 et seq. Tennessee Code Annotated § 29-20-307 expressly states that circuit courts shall have "exclusive original jurisdiction" over TGTLA claims. The Sixth Circuit has held that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance [under 28 U.S.C. § 1367(c)(4)] for declining jurisdiction." Gregory v. Shelby County, Tenn., 220 F.3d 433, 446 (6th Cir. 2000). The Court, therefore, declines

to exercise supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff's state law tort claims against Defendants are DISMISSED WITHOUT PREJUDICE.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's § 1983 claims.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims; Plaintiff's negligence, gross negligence, negligent infliction of emotional distress, and outrageous conduct claims are therefore DISMISSED WITHOUT PREJUDICE.

SO ORDERED this 29th day of July, 2010.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE